IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ANNE BRYANT                                              PLAINTIFF

v.                            CIVIL ACTION NO. 2:20-CV-134-KS-MTP

STATE FARM FIRE AND CASUALTY
COMPANY                                                 DEFENDANT

### MEMORANDUM OPINION AND ORDER

This is an insurance dispute. Plaintiff, the policyholder, claims that Defendant, the insurer, denied and/or delayed payment in bad faith after a house fire. Defendant filed a Motion for Partial Summary Judgment [33], which the Court **grants**.

### I. BACKGROUND

Plaintiff's house burned down on August 5, 2018. Exhibit A [33-1], at 1; Exhibit D [33-4], at 1. At the time of the fire, the house was insured under a homeowners policy issued by Defendant. Exhibit V [33-22]. Defendant paid the policy limit on the main dwelling within a couple of weeks after the fire.

As early as August 8, 2018, Defendant's adjuster met with Plaintiff to discuss her claim. Exhibit D [33-4], at 1. On August 20, 2018, Defendant sent Plaintiff a letter with a detailed description of the information required to process a contents claim, as well as a link to a website with a contents inventory form. *Id.* at 2. Defendant sent additional letters to Plaintiff requesting a list of contents destroyed in the fire and supporting information on the following dates: September 19, 2018; October 18, 2018; December 5, 2018; January 31, 2019; and March 15, 2019. Exhibit E [33-5]; Exhibit

F [33-6]; Exhibit G [33-7]; Exhibit H [33-8]; Exhibit I [33-9]. Defendant's adjuster also called Plaintiff on September 20 and October 18, 2018. Exhibit A [33-1], at 19. In the letter sent on March 15, 2019, Defendant advised that it was placing her contents claim on inactive status until she provided an inventory of the contents destroyed in the fire. Exhibit I [33-9].

On April 2, 2019, Plaintiff's counsel sent Defendant a letter demanding payment of the full amount of contents coverage ($102,850) and a copy of Plaintiff's policy. Exhibit J [33-10]. On May 3, 2019, Defendant forwarded counsel a copy of the policy, Exhibit K [33-11], and sent counsel a list of the information needed to process Plaintiff's contents claim. Exhibit L [33-12]. Defendant's adjuster called Plaintiff's counsel on May 23, 2019, and counsel advised that he would send Plaintiff's inventory when it was complete. Exhibit A [33-1], at 12. Nine months later – almost eighteen months after the loss – Plaintiff's counsel finally provided Defendant with an inventory of contents lost in the fire. *Id.* at 12; Exhibit M [33-13]. Plaintiff's counsel supplemented the list on February 20, 2020. Exhibit N [33-14]. The list was twenty-five pages long and totaled $268,529.81, and it did not include the age and/or date of purchase for most of the claimed items. *Id.* Counsel later forwarded Plaintiff's affidavit in support of the claimed inventory. Exhibit R [33-18].

On April 2, 2020, Defendant's adjuster forwarded Plaintiff's counsel a copy of an inventory worksheet and asked Plaintiff to provide the age and/or date of purchase of each item. Exhibit O [33-15]. Each prior letter from Defendant had specified that

this information was required to process the claim. *See* Exhibit D [33-4], at 2; Exhibit E [33-5]; Exhibit F [33-6]; Exhibit G [33-7]; Exhibit H [33-8]; Exhibit I [33-9]; Exhibit L [33-12]. A few days later, Plaintiff's counsel responded, asserting that Plaintiff had provided all the information she could, and that Defendant must either pay the full policy limit or deny the claim, in which case Plaintiff would file a lawsuit. Exhibit P [33-16]. Accordingly, Defendant issued Plaintiff a payment of $2,722.22 on her contents claim, for the items for which she had provided complete information. Exhibit Q [33-17]. The adjuster advised that once Plaintiff submitted more information for the other items on the inventory list, Defendant would process the remainder of the claim. *Id.* at 3.

On May 11, 2020, Plaintiff's counsel responded by forwarding an affidavit from Plaintiff in which she stated that any documentation regarding the items on her list was destroyed in the fire. Exhibit R [33-18], at 3. One month later, Plaintiff filed this lawsuit in the Circuit Court of Marion County, Mississippi. Exhibit A [1-2]. On March 8, 2021, during her deposition, Plaintiff provided more information about many of the items listed in her inventory. Exhibit S [33-19]. Defendant eventually filed a Motion for Partial Summary Judgment [33], which the Court now addresses.[1]

---

[1] Plaintiff filed 765 pages of exhibits with her brief in response to Defendant's motion, but she did not cite to any specific exhibit (much less to a specific page in any exhibit) at any point in the brief. The Court is not obligated to sift through the record in search of evidence to support a party's arguments. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). If a party makes a factual assertion in a brief on summary judgment, it is that party's responsibility to direct the Court to the specific evidence in the record which supports the assertion.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

4

### III. DISCUSSION

**A.    *Bad Faith Denial – Contents***

First, Defendant argues that the record contains no evidence that it denied Plaintiff's contents claim. Rather, Defendant argues that Plaintiff has not provided sufficient information for the claim to be processed, and that it has continuously tried to process Plaintiff's contents claim, despite her delay in providing information to support it.

The Court thoroughly examined the record evidence and was unable to find any evidence that Defendant denied Plaintiff's contents claim. Moreover, the Court thoroughly studied Plaintiff's brief and was unable to find any assertion that Defendant denied Plaintiff's contents claim. Therefore, to the extent Plaintiff asserted any claim of bad faith denial of her contents claim, the Court grants Defendant's motion as to that claim.

**B.    *Bad Faith Delay – Contents***

Next, Defendant argues that the evidence demonstrates that it did not delay payment on Plaintiff's contents claim in bad faith. Rather, Defendant argues that it maintained an active investigation of her claim from the time she reported the loss until present.

The "Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment." *Caldwell v. Alfa Ins. Co.*, 686 So. 2d

1092, 1099 (Miss. 1996). However, in particularly egregious cases, an insurer's delay of payment on a legitimate claim can constitute bad faith. *Id.* at 1097-99; *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014). To prove a claim of bad faith delay, an insured "must establish three factors: 1) [the insurer] had a contractual obligation to her; 2) [the insurer] lacked an arguable or legitimate basis for its delay in paying her claim; and 3) [the insurer's] failure resulted from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort." *James*, 743 F.3d at 70.

An insurer has no arguable basis for delaying payment on a claim if "nothing legal or factual would have arguably justified" its position. *Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 272 (5th Cir. 2008). Conversely, an insurer has an arguable reason "if there is some credible evidence that supports [its] conclusions on the basis of which [it] acts." *Hood v. Sears Roebuck & Co.*, 532 F. Supp. 2d 795, 803 (S.D. Miss. 2005). The fact that an insurer may ultimately be incorrect "does not in and of itself warrant an award of punitive damages if the decision was reached in good faith." *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (Miss. 2003). The insurer bears the initial burden of demonstrating "that it had reasonable justifications, either in fact or in law, for its actions. Once an insurance company articulates an arguable or legitimate reason for its [actions], the insured bears the burden of demonstrating that the insurer had no arguable reason." *Essinger*, 529 F.3d at 272.

6

Defendant argues that it has been actively investigating Plaintiff's claim. "[C]onducting a prompt and adequate investigation provides a legitimate basis for a payment delay." *James*, 743 F.3d at 72 (citing *Caldwell*, 686 So. 2d at 1098). Indeed, an insurer is "required by Mississippi law to conduct a thorough investigation." *Caldwell*, 686 So. 2d at 1098. Accordingly, this Court has held on numerous occasions that the legitimate investigation of a claim generally precludes a claim of bad faith delay. *See, e.g. Nuzzo v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 1030994, at *6 (S.D. Miss. Mar. 17, 2021); *Smith v. Union Nat'l Life Ins. Co.*, 2018 WL 1021342, at *21-*22 (S.D. Miss. Feb. 22, 2018); *Calvert v. Allstate Prop. & Cas. Ins. Co.*, 2016 WL 426548, at *2 (S.D. Miss. Feb. 3, 2016); *Triplett v. Liberty Mut. Fire Ins. Co.*, 2015 WL 4775349, at *2-*4 (S.D. Miss. Aug. 13, 2015). "A proper investigation requires 'at a minimum . . . making a reasonable effort to secure all available . . . information relevant to the policyholder's claim.'" *Nuzzo*, 2021 WL 1030994 at *4 (punctuation omitted) (quoting *Lewis v. Equity Nat'l Life Ins. Co.*, 637 So. 2d 183, 187 (Miss. 1994)). The Court looks at the "totality of the circumstances to determine whether [an insurer] had an arguable or legitimate basis for its delay." *James*, 743 F.3d at 72.

The policy provides that Defendant "will pay the cost to repair or replace" personal property, but "until repair or replacement is completed, [it] will pay only the cost to repair or replace less depreciation." Exhibit V [33-22], at 27. Additionally, "after repair or replacement is completed, [Defendant] will pay the difference between the cost to repair or replace less depreciation and the cost [Plaintiff has] actually and

necessarily spent to repair or replace the property." *Id.* If the destroyed property is not repaired or replaced within two years of the loss, Defendant "will pay only the cost to repair or replace less depreciation." *Id.* Therefore, the age and/or date of purchase of each claimed item is relevant to the amount that Defendant owes under the policy.

Additionally, the evidence shows that Defendant's adjuster met with Plaintiff to discuss her claim immediately after the fire. Exhibit D [33-4], at 1. The adjuster then tried to get information from Plaintiff about the claim for months. *Id.* at 2; Exhibit E [33-5]; Exhibit F [33-6]; Exhibit G [33-7]; Exhibit H [33-8]; Exhibit I [33-9]; Exhibit A [33-1], at 19. Plaintiff finally provided a contents inventory approximately eighteen months after the fire. Exhibit M [33-13]. However, Plaintiff did not provide the age and/or purchase date of most of the items on her list. Therefore, over the next several months, Defendant tried to obtain the requisite information for each claimed item. Exhibit O [33-15]; Exhibit Q [33-17]. Plaintiff finally provided more information during her deposition on March 8, 2021, after she had filed this lawsuit, Exhibit S [33-19], and Defendant represented in briefing that it is "currently reviewing her testimony regarding contents to determine if a supplemental payment should be tendered."

The Court concludes that there is no genuine dispute of material fact on this point: Defendant has been actively investigating Plaintiff's claim since days after the fire. It took Plaintiff approximately eighteen months to provide an inventory of the

personal property lost in the fire. Then Plaintiff failed to provide any information about the age of the items on the list until she was deposed in this case. The delay in payment – at least through the time relevant to the present motion – is not Defendant's fault. It is Plaintiff's. The Court grants Defendant's motion as to Plaintiff's claim of bad faith delay in payment.

Plaintiff argues that Defendant failed to provide a copy of her policy, but Plaintiff does not explain how this alleged failure is relevant to her bad faith claim. Even if Defendant failed to provide a copy of the policy, it was still actively investigating Plaintiff's claim and attempting to determine the value of the contents of her home according to the payment terms provided in the policy. Defendant's alleged failure to provide a copy of the policy until Plaintiff asked for one during the claim process does not constitute an "intentional wrong, insult, or abuse," or "gross negligence as constitutes an intentional tort." *James*, 743 F.3d at 70.

Plaintiff also argues that her insurance agent represented to her that "she would be taken care of in the event of any loss," and that Defendant's investigation of the age of the items on her contents list was, therefore, undertaken in bad faith. However, an insured may not reasonably rely on representations made by an insurer's agent that are contrary to the unambiguous terms of the policy. *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 438 (5th Cir. 2007); *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 464 (5th Cir. 2003). Moreover, Plaintiff has not cited any evidence or law suggesting that Defendant's investigation of her claim to determine a payment

amount pursuant to the terms of the policy constitutes an "intentional wrong, insult, or abuse," or "gross negligence as constitutes an intentional tort." *James*, 743 F.3d at 70.

Finally, Plaintiff argues that Defendant's motion is untimely, and that the Court can only address the viability of a bad faith claim after the breach of contract claim has been tried. "A bad faith claim is an independent tort separable in both law and fact from a contract claim." *Dey v. State Farm Mut. Auto. Ins. Co.*, 789 F.3d 629, 633 (5th Cir. 2015). A contractual obligation is only one out of three elements an insured must prove to succeed on a bad faith claim. *James*, 743 F.3d at 70. Therefore, if there is no genuine dispute of material fact as to the other two elements – an arguable reason for the insurer's action, and conduct egregious enough to constitute an intentional tort – there is no reason the Court can not address bad faith on summary judgment.

## C.   *Bad Faith Denial – Dwelling Extension*

Defendant also argues that it had an arguable reason for not paying Plaintiff's dwelling extension claim. As noted above, to prove a claim of bad faith delay, an insured "must establish three factors: 1) [the insurer] had a contractual obligation to her; 2) [the insurer] lacked an arguable or legitimate basis for its delay in paying her claim; and 3) [the insurer's] failure resulted from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort." *Id.* at 70. The insurer bears the initial burden of demonstrating "that it had reasonable

justifications, either in fact or in law, for its actions. Once an insurance company articulates an arguable or legitimate reason for its [actions], the insured bears the burden of demonstrating that the insurer had no arguable reason." *Essinger*, 529 F.3d at 272.

Plaintiff had a separate cinder-block laundry room on the property that was also destroyed by the fire. The policy provides an extra $18,030 in coverage for "other structures on the residence premises, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures." Exhibit V [33-22], at 17. In the adjuster's initial assessment of the property, he noted that there was a "detached cinder block laundry room on [the] premises." Exhibit A [33-1], at 23; *see also* Exhibit C [37-3], at 1. However, the home was a "total loss," and the adjuster was forced to view a photograph of the property to determine whether the laundry room was detached from the main dwelling. Exhibit C [37-3], at 1. "The photograph appeared to depict the separate cinder block structure to be connected to the main dwelling by a continuous roof line. As such, [he] concluded that the structure did not meet the definition of a dwelling extension," and he categorized it as falling under the main dwelling coverage section. *Id.* at 1-3. Moreover, the adjuster claims – and Plaintiff has not disputed – that she never asserted "that her laundry room qualified as a dwelling extension," or sought "a review of the estimate" that the adjuster provided. *Id.* at 2.

11

During Plaintiff's deposition, she testified that the laundry room – or "wash house" – was built after the main dwelling, and that there was a "gap between the buildings." *Id.* at 123-24. She described an empty space between the roof of the carport, which was attached to the main dwelling, and the roof of the laundry room, which was not. *Id.* at 128-29. Based on this information – provided for the first time during this litigation – Defendant represented that it intends to tender "the dwelling extension limits along with interest from" the date it paid policy limits on the main dwelling.

An insurer has an arguable reason to deny a claim "if there is some credible evidence that supports [its] conclusions on the basis of which [it] acts." *Hood*, 532 F. Supp. 2d at 803. The fact that an insurer may ultimately be incorrect "does not in and of itself warrant an award of punitive damages if the decision was reached in good faith." *McKneely*, 862 So. 2d at 533. Here, there was credible evidence to support the adjuster's conclusion that the laundry room was not detached from the main dwelling. The house was a total loss, and the adjuster was forced to rely on photographs. The photograph in the record appears to show one continuous roof line. Exhibit C [33-3]. Plaintiff has not directed the Court to any evidence that the adjuster concluded that the laundry room was attached to the main dwelling in bad faith. Rather, it appears to be undisputed that he just made a mistake.

Therefore, the Court finds that Defendant had an arguable reason for failing to pay dwelling extension benefits. The Court also finds that Plaintiff has not directed

12

the Court to any evidence that Defendant's failure to pay dwelling extension benefits "resulted from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort." *James*, 743 F.3d at 70. Accordingly, the Court grants Defendant's motion as to Plaintiff's bad faith claim arising from the dwelling extension coverage.

**D.    *Punitive/Extra-Contractual Damages***

Defendant argues that the Court should grant summary judgment in its favor as to Plaintiff's claim for punitive damages. An insured is only entitled to punitive damages if an insurer denied or delayed payment on a claim in bad faith. *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 627 (5th Cir. 2008). Other forms of extra-contractual damages "may be appropriate where the insurer lacks an arguable basis for delaying or denying a claim, but the conduct was not sufficiently egregious to justify the imposition of punitive damages." *Essinger*, 534 F.3d at 451.

The Court has granted summary judgment in Defendant's favor as to Plaintiff's bad faith claims. Therefore, Plaintiff can not recover punitive damages. Likewise, the Court has found that the record evidence demonstrates that Defendant had an arguable reason for its claim decisions. Therefore, Plaintiff cannot recover other forms of extra-contractual damages.

## IV. CONCLUSION

For these reasons, the Court **grants** Defendant's Motion for Partial Summary Judgment [33].

13

SO ORDERED AND ADJUDGED this 21st day of July, 2021.

                                     /s/      Keith Starrett
                                           KEITH STARRETT
                            UNITED STATES DISTRICT JUDGE

14